The next argued case is Sandoval v. Holder. Good morning. May it please the court. My name is Mario Acosta, Jr. And I'm joined here today by Attorney Elsa Martinez. And together, we represent the petitioner in this case, Mr. Hector Miguel Sandoval. With the court's permission, I'd like to reserve two minutes of my argument time for rebuttal. Your Honors, there's no question that the board abuses its discretion whenever it acts in a manner that's arbitrary, irrational, contrary to law. In prior case law from this court, this court has set out certain guidelines that the BIA must follow when considering a motion to reopen, regardless of what the ground is for reopening that's being asserted by the alien. The court has made it clear that the board is obligated to consider both favorable and unfavorable factors, that it must take into account social and humane considerations when making a decision whether to grant or deny a motion, even though ultimately its decision is discretionary. In this case, we submit to the court that there were quite a few factual errors, factual errors that caused the board to miscalculate the number of positive and negative factors that were in this case, and ultimately affected the board's ultimate denial of the motion to reopen. Well, this is the request to reopen sua sponte? That's correct, Your Honor. What does sua sponte mean? It's the board's discretion to reopen. That's absolutely correct. However, we assert that there is prior case law that specifically addresses this issue. We cited to the case of Franco Rosendo, where the board specifically denied a motion on grounds that the petitioners had not complied with an order of voluntary departure that had been issued to them. But nonetheless, the Ninth Circuit pointed out that at no point did the board adequately consider some of the very social and humane considerations in that motion, such as that the petitioner was severely ill and could not travel and could not voluntarily depart on her own. I would also submit that another case, Arosal v. INS, which Franco Rosendo very much relied upon, in that case, Your Honors, the petitioner, Arosal, had actually been ordered deported in 1990. Arosal filed a motion to review in 1996, six years later. And I don't believe that there was at any point any argument made that the motion was untimely, that it was the board's sua sponte authority that was being invoked, which the board has always had. I think ever since the inception of Motions to Reopen, the board has always consistently held that it has its own power to reopen a proceeding. But nonetheless, the court still pointed out that it did not properly consider certain factors in the motion. How do you get around, I mean, the first case is Akinion, and then there's some cases followed. How do you get around that? I believe, Your Honor, that the way you get around it is just by quite simply looking at whether or not the factors that were considered were ever even considered to begin with or properly considered. I don't think that in the context of Motions to Reopen And how do we know whether they were considered or properly considered? I believe that in this case, Your Honor, the board almost sets it out for you. For instance, in this case, the board specifically said that it was not willing to consider any equities that Mr. Sandoval had acquired after he had overstated voluntary departure. This is factually inaccurate. The record conclusively proves that after the board denied the appeal on October 7th of 2003, that at that point, on October 23rd, almost 16 days later, Mr. Sandoval marries his U.S. citizen wife. It was during the voluntary departure period that the board had granted to Mr. Sandoval of 30 days. And at that point, at that very point, Mr. Sandoval became eligible for cancellation or removal. I know that Respondent, in their opening brief, seemed to focus on the fact that an I-130 family-based petition wasn't filed until 2004, but that was a separate application that he might have been eligible for. But what we were focusing on was the fact that he was eligible for cancellation or removal. So you would read Akemian and the cases following Akemian as saying we don't have jurisdiction to review a court's refusal to reopen to Esponte except to ensure that the board has carefully considered all the evidence properly before it. I believe that cases such as Arrozal, Constantinolo v. INS, and Franco-Rosendo stand for that proposition, Your Honor. How could Franco-Rosendo stand for that proposition? It was a timely motion to reopen. I understand, Your Honor. It was an obligation of the board to consider. Su Esponte means the board on its own initiative. And how can it be that you're allowed to force the board to do something on its own initiative? I mean, that just strips away the term Su Esponte, doesn't it? With all due respect, Your Honor, I believe that what we're trying to focus on is ultimately if the board was to make a determination that Mr. Sandoval had 10 favorable factors and had one negative factor, but still it refused to reopen, I agree that Akemian would stand for the proposition that that decision would be insulated from review because at that point it was their discretion. And whether or not they balanced it correctly, it doesn't matter. They made a decision. It would suggest a process that need never end because a client, your client, could always make another request to the board to reopen Su Esponte on whatever ground he could imagine, real or not. And you would say the board has an obligation to give thought to it, decide, and provide a reasoned decision. And then you have a right to come to our court on a petition for review after that process has taken three years. And we say no. Suddenly there's another motion to the board to reopen Su Esponte on still another imaginary reason. And here we go again. There's no end to this process as I hear it from you. Well, Your Honor, I would have to respectfully disagree only because I don't believe that in this particular case we necessarily are Where would you draw the line? Because you're requiring us to decide the merits of this case in order to decide whether the case can continue. But we can't do that. At some point there has to be a time where you can say, No, you've had your chance. It's over. And why isn't it here if what you have left is a Su Esponte request for the board to act Su Esponte? Which means the board's decision. I understand, Your Honor. I don't believe that we're trying to, that necessarily the rule that we're trying to propose to the court would somehow open the floodgates to a bunch of frivolous motions and a bunch of frivolous appeals. Because, again, if the court was to identify that the board got everything correct in its decision, in its citation of whatever evidence or facts were presented, then I don't believe that We did that a couple years ago. We've already done that a couple years ago. So how is this case different from my hypothetical? There has already been a decision of this court concerning your client. Well, Your Honor, the prior decision had material mistakes in it to begin with. And number two, again Well, prior decision by this court? Well, I believe by the BIA You expect us to be grading the papers of our colleagues? No, no, no. What I'm trying to just simply point out to the court is that we're obviously not here to litigate the prior motion. What it comes down to is this. The BIA, in matter of JJ, on its own said, You know what? We're going to read into the regulation, even though it's not in the regulation, that we have our own power to reopen a case. And it will reopen a case if we find that there's an exceptional circumstance or extraordinary circumstance that warrants reopening. At that point, the BIA opened itself up to possibly having that case reviewed. In every single case that this court has held that it's not entitled or not able to review a discretionary decision, it's been because Congress said so. It's been because the Attorney General has said, Ninth Circuit, you don't have the authority to review a discretionary denial of cancellation. You don't have the authority to review a discretionary denial of a two-trustee waiver. Congress never said that here. And at most, it's ambiguous. And we all know that if something is ambiguous, then usually it's interpreted in favor of the alien, Your Honor. The BIA did not at any point cite to any, you know, regulation or congressional statute. It just said it's on its own. We believe that we can reopen a case on our own to respond to it. I suggest that the remedy should be, then, for us to say to the BIA, no, you can't. No matter how good the case is, once it's done with you, it's done. I don't know that that would be a particularly good result for the population in general. Well, I think that you would have maybe some brand X issues with regards to that. But nonetheless, Your Honor, I think what we're trying to propose to the Court is when the Board in and of itself, on its own, says, we're going to take it upon ourselves to make a discretionary decision to consider a motion to reopen under our sua sponte authority. And then it completely gets the facts wrong. And it's clear from reading the decision. It gets many of the facts wrong. It gets some of the law wrong. I don't think at that point you can say that the decision is insulated. Because, again, there's no congressional statute that bars review from that decision. And number two, this Court has consistently held that a motion to reopen is different. It's a final order, and it's different. And it's always been subject to review for abuse of discretion. Assuming I agree with you that in considering a sua sponte reopening, the Board has an obligation to understand what's in front of it. Once it understands it, it can do what it wants to do. That's correct. How would you limit our review of that? That is to say, I'm worried for the reasons that Judge Clifton is sketching out that this would be a very difficult thing for us to understand. Well, what did the Board understand? Well, I think that definitely you can limit it to the facts of this case, which was we are raising issues regarding the findings of fact that the Board made, which this Court has always held that it can review for substantial evidence. I believe that at least for the facts of this case, if you just want to try to create a bright-line rule, it's just for specifically the facts of this case that the Board got the facts wrong. And it's clear from the Board's decision that it got the facts wrong. What would prevent any other petitioner from arguing, the Board got the facts wrong in my case, and keep the process alive for another couple of years, and when our Court says no to that, file still another request to the BIA for purported reopening sua sponte, and wait for the Board to speak to that, and then come back to the Ninth Circuit with another petitioner review saying, well, this time they did get the facts wrong. The process never ends. Well, I think that those facts might be a little bit distinguishable, Your Honor, but just focusing on the facts here, I don't think that that's the situation. Could you limit the principle you're arguing for? Well, we get to review the case to make sure the BIA has its facts wrong when on the face of the record it is apparent that the BIA has the facts wrong. When it's not apparent on the face of the record, we don't inquire. But if it's apparent from the face of the record that the BIA has got the facts wrong in making this discretionary decision, we at least have jurisdiction to review whether or not they got the facts wrong that are apparent on the face of the record. Would that, in fact, take care of your case? I believe it would take care of our case, and it would also leave open the possibility of raising any legal errors that the BIA makes, like we assert they made here in regards to how they treated a matter of AM and whether or not that represented a significant fundamental change in the law. Okay, we've taken you over. Let's hear from the government. We will give you a chance to respond. Thank you, Your Honor. Thank you. Thank you. May it please the Court, my name is Claire Workman and I represent the Attorney General of the United States who is the respondent in this case. This Court should deny this petition for review because the Board acted well within its considerable discretion in denying Mr. Sandoval's second untimely motion to reopen. Mr. Sandoval has been to this Court before and raises the same ineffective assistance of counsel claim that this Court already denied. So the Court need not re-litigate this issue. Let me ask you this. Do you agree that there are errors in what the Board understood about the facts of this case that are apparent from the face of the record? No, Your Honor. The Board's decision not to respond to reopen was a discretionary decision which, according to this Court's precedent, this Court cannot review. Oh, I understand. I mean, that's a Kimmian. I wrote a Kimmian. Yes. I hated the Kimmian as I wrote it, but I wrote it and there it is. Okay. I understand that. Yes, Your Honor. The only factual error that Petitioner has alleged in his brief that, to my understanding, is the Board's finding that Mr. Sandoval, his equities were accrued after the voluntary departure period. And as we pointed out in our brief, his marriage occurred during the voluntary departure period, but that the I-130 was not filed until significantly after the voluntary departure period. So the Board did not make any kind of factual or legal error. And in terms of any legal errors, none were alleged and none are apparent from the record. This may then be a hypothetical because if we agree with your view of what happened and did not happen in this case, it would not come up. But let's assume that we have a case in which sui sponte reopening is at issue and the Board makes it very clear from its written decision that it has misunderstood an important fact. Now, do we have jurisdiction to say to the Board, listen, this fact you got wrong, here's the obvious truth of the matter, you go back and rethink it and once you get the fact right, you can do whatever you want and we don't have jurisdiction. Do we have jurisdiction to say to the Board, listen, you have an obligation at least to correct the erroneous factual determinations that we can see on the face of the record? Well, Your Honor, as we all understand, that's not the facts of this case. Yeah, that's it. Of course, yes. He thinks it is. We may end up agreeing with him, but you don't think so. For the purposes of my question to you, it's a purely hypothetical question. Okay, I understand that. I'm not asking you to concede. Okay, thank you, Your Honor. To the best of my knowledge, this Court has not held in a published decision that it has jurisdiction to review a sua sponte decision, a decision by the Board not to sua sponte reopen, even if there is an exception made under the Real ID Act of the constitutional question or legal question, and that exception to a jurisdictional bar, which, of course, was not alleged here. But so in this case, it would be merely an advisory kind of opinion if the Court or dicta if the Court chose to go into that question. Why would it be advisory? In many instances, we do take discretionary decisions made by lower courts and say, well, you missed this. Now go back and exercise your discretion once you understand, now that you understand the truth of whatever it is. Well, because as this Court's precedent, as you very well know, has said, there is no meaningful standard of review for a sua sponte decision. Petitioner's counsel pointed out that the Board's discretionary decision whether to sua sponte reopen is ambiguous or there's no statute or regulation or case law determining when the Board should sua sponte reopen. So discretionary decisions are best left to the agency because it has the Congress has intended for that. And In this case, the agency itself may have asserted the discretion. It's not clear under the statute that the agency or the BIA has some of the sua sponte authority that is asserted. I'm not saying it's a bad thing or that the agency can't assert it, but we're kind of in a gray zone just to begin with trying to define the parameters of this as I see it. Right. And that's exactly why the Court doesn't have jurisdiction over it, because there is no meaningful standard of review. And We have said in other contexts, let's take the easiest one, the one we get most commonly, the discretionary hardship determination and the cancellation of removal. We have no authority to revisit the hardship determination itself, but our case law clearly says that there are due process considerations that permit us to examine the question of whether the agency, the BIA or the IJ, excuse me, considered the factors they were supposed to consider. So at least in some contexts, we have asserted via due process, the authority to examine the decision-making process. Why shouldn't that apply in this instance? Well, because, Your Honor, from the face of the record and because there's been no other allegation that I can see of any factual or legal error, it's just not an issue here in this case. It's just purely the Board's decision not to sua sponte. There wasn't, the Board did not make any errors. So there's That gets down to the substance of it again. And that's a question that we may need to visit. But I'm trying to, at the first stage, just figuring out how the system works. And for that, we need to hypothesize kind of both or multiple variables. Let's take a case that's pretty obvious. Suppose there is a plain factual mistake that the BIA mixed cases up, which, frankly, I have problems with all the time because of the volume we have, and they've got even more than I have. So suppose they just got the wrong petitioner in mind for a case. So the facts are simply not the person who's made this request for sua sponte reopening. At that point, do we have authority to say, wait a minute, something's off the tracks here. This isn't the right guy. It's sua sponte, but you need to at least to make sure you've got the right guy. Do we have the authority at that point to say, as a matter of due process, that the BIA needs to take another look at it? I think that's a question that this Court hasn't yet decided. I know that at least one other Court has considered that issue. But because those aren't the facts of this case, I don't think that that's a question that's before this Court here. And you don't want to answer it hypothetically? No, Your Honor. I would also like to point out that this Court does not have jurisdiction to review the Board's October 8, 2003 decision granting the 30 days of voluntary departure because the petitioner never filed a petition for review of that decision. And, of course, the Board's decision to grant just 30 days was consistent with its case law at the time. And a very significant fact in this case is that the petitioner filed his motion to reopen way beyond the expiration of his voluntary departure time. And this Court, even in the time in 2003, held that it didn't have jurisdiction to extend voluntary departure once it had expired. And in any event, the petitioner has never claimed that if he had been granted those extra 30 days, that he would have voluntarily departed. He didn't voluntarily depart here at all after 30 days, after 60 days. So, really, the question of the voluntary departure issue is not properly before this Court. And I see that my time is almost up, so I would just like to say that because Mr. Sandoval has failed to show that the Board abused its discretion in denying his second untimely motion to reopen and that this Court lacks jurisdiction over his other claims, this Court should dismiss and or deny his petition for review. Okay. Thank you. Thank you. Mr. Acosta, you went over, but would you like one minute? Please, Your Honor. Okay. And notice that I said one minute. I understand. And I appreciate that. Your Honor, just very quickly, I'm going to just point out the following. Judge Clifton, I understand your concern in regards to opening the floodgates, but I believe that the Court has certain procedural safeguards. You have order to show causes in the event that somebody is abusing the motion to reopen and filing petition for review procedure. You also have the respondent, who I'm sure is going to file motions to dismiss all the time, saying that the BIA made no factual errors. At that point, you can eliminate somebody spending two, three, four years waiting for a Ninth Circuit decision when, in fact, there's no basis to appeal that. Secondly, in regards to this issue having been brought up before, I would really beg the Court to go back and look at Adelsob, the INS, specifically the petitioner's opening brief, which outlines the facts of the case. Adelsob was deported in 1990, filed a motion to reopen in 1996. There was nothing in the motion to argue that it was timely. But nonetheless, the Ninth Circuit still went on and talked about the fact that even though the motion to reopen was filed late, untimely, obviously six years later, that nonetheless, the BIA was obligated to consider both the favorable and the unfavorable factors in the decision, because it had not done so correctly in that case that it had to remand it back to the BIA. And with that, Your Honors, I thank you for your time. Okay. Thank you both for your arguments. Case of Sandville v. Scholder is now submitted for decision. There's a case, the Nell v. Molson Picture Association, that's been taken off calendar.
judges: Hall, Fletcher W. , Clifton